**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| GENARO MARTIN MAYDANA | § | |
| RAMIREZ, et al. | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | |
| vs. | § | C.A. NO. C-07-228 |
| | § | |
| MICHELIN NORTH AMERICA, INC., | § | |
| and OLBERTH AMILKAR MAYDANA, | § | |
| | § | |
|     Defendants. | § | |

## ORDER DENYING PLAINTIFFS' MOTION TO REMAND

On this day came on to be considered Plaintiffs' "Motion to Remand" (D.E. 5) the above-styled action for lack of subject matter jurisdiction.  For the reasons discussed below, the Motion to Remand is DENIED and Plaintiffs' claims against Defendant Olberth Maydana are hereby DISMISSED.

## I.   BACKGROUND

On October 11, 2006, Plaintiffs Genaro Martin Maydana Ramirez, Martha Torrico DeMaydana, and Claudia Faviola Maydana (collectively "Plaintiffs") filed suit against Defendants Michelin North America, Michelin Americas Research & Development Corporation[1] (together, "Michelin") and Olberth Maydana in the 105th Judicial District Court of Kenedy County, Texas.[2]  (Pls.' Orig. Pet. ("POP") at 1.)

---

[1] Plaintiffs did not name Michelin Americas Research & Development Corporation as a Defendant until their Second Amended Petition.  (See Pls.' 2d Am. Pet. at ¶ 6.)

[2] Plaintiff Genaro Ramirez brought suit in both his individual capacity and as next friend of Harold D. Maydana Torrico, a minor child.  (Pls.' 3d Am. Pet. at ¶ 2.)

In their Petition, Plaintiffs alleged that, on July 3, 2006, Defendant Olberth Maydana was driving a vehicle northbound on Expressway 77.  (POP at ¶ 10.)  Plaintiffs were passengers in Defendant Olberth Maydana's vehicle.  (POP at ¶ 10.)  Plaintiffs alleged that, as Defendant Olberth Maydana was driving, the vehicle suddenly and unexpectedly experienced a "detread" on its left-rear tire, causing the vehicle "to lose control and rollover."  (POP at ¶ 10.)  Plaintiffs contend that, during the rollover sequence, they suffered serious injuries.  (POP at ¶ 10.)  Plaintiffs asserted causes of action against Michelin for products liability, breach of implied warranties and negligence, alleging that Michelin designed, manufactured, and distributed the tire in question and that the tire was unreasonably dangerous and defective.  (POP at ¶¶ 11-16.)  Plaintiffs also asserted a cause of action for negligence against Defendant Olberth Maydana, alleging that he was negligent in "failing to properly maintain the tire in question and failing to control the vehicle."[3]  (Pls.' 3d Am. Pet. at ¶ 17.)  Plaintiffs sought relief in the form of actual and exemplary damages for their injuries, together with interest, attorneys fees, and costs.  (Pls.' 3d Am. Pet. at 6.)

On April 19 and 20, 2007, during the course of the state court

---

[3] Notably, although Olberth Maydana was named as a Defendant in Plaintiffs' Original Petition, Plaintiffs did not assert any causes of action against him.  (See Pls.' Orig. Pet.)  On October 17, 2006, Plaintiffs amended their original petition to assert a negligence claim against Defendant Olberth Maydana.  (Pls.' Am. Pet. at ¶ 17.)

proceedings, Michelin took the depositions of the three Plaintiffs. (See Def.'s Ex. ("DEX") D-F.)  During these depositions, Plaintiffs gave testimony which Michelin believed demonstrated that Plaintiffs had improperly joined Defendant Olberth Maydana for the purpose of defeating diversity jurisdiction.  (NOR at ¶ 3.)  Accordingly, on May 21, 2007, Michelin removed the case from state court to this Court, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).[4]  (D.E. 1.)  In its Notice of Removal, Michelin alleged that the Plaintiffs are all citizens of Texas, whereas Michelin is a citizen of South Carolina.  (See Not. of Rem. ("NOR") at ¶ 2.) Michelin acknowledged that Defendant Olberth Maydana is, like the Plaintiffs, a citizen of Texas.  (NOR at ¶ 3.)  Nevertheless, Michelin argued that the Court should ignore his citizenship in determining the existence of diversity jurisdiction because he was "improperly joined."  (NOR at ¶ 3.)

On June 4, 2007, Plaintiffs filed a "Motion to Remand" the

_____

[4] Although Plaintiff has not objected to this timeliness of Defendant's removal, the Court notes that the case was timely removed.  On April 19, 2007, Michelin took the deposition testimony of Plaintiff Genaro Martin Maydana Ramirez, during which Michelin first received information that Defendant Olberth Maydana may have been improperly joined.  (NOR at ¶ 6.)  Pursuant to statute, Michelin accordingly had 30 days from that date to file a notice of removal.  28 U.S.C. § 1446(b) ("If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . [of] other paper from which it may first be ascertained that the case is one which is or has become removable").  Defendant therefore had until May 19, 2007 to file a notice of removal with this Court.  Because May 19 fell on a Saturday, however, Michelin had until the following Monday, May 21, 2007, to file its notice of removal.  Fed. R. Civ. P. 6(a).

case back to state court, arguing that they had not abandoned their negligence claim against Defendant Olberth Maydana.  (D.E. 5.)  On June 8, 2007, Michelin filed a response in opposition to the Motion to Remand, arguing that Plaintiffs' deposition testimony fatally undermined the factual predicate for their negligence claim against Defendant Olberth Maydana.  (D.E. 6.)  Finally, on June 13, 2007, Plaintiffs filed a "Reply" to Michelin's Response.  (D.E. 8.)  The Court now considers Plaintiffs' Motion to Remand.

## II.  DISCUSSION

### A.    Standard for Motion to Remand

A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction.  See 28 U.S.C. § 1441(a).  The removing party--as the party seeking the federal forum--bears the burden of showing that federal jurisdiction exists and that removal was proper. See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002).  In evaluating jurisdiction, "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand."  Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002); see also Acuna v. Brown & Root, Inc., 200 F.3d 335, 339 (5th Cir. 2000) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction").

Where the alleged basis for federal jurisdiction is diversity

under 28 U.S.C. § 1332, a court has subject matter jurisdiction if

there is: (1) complete diversity of citizenship; and (2) an amount-

in-controversy greater than $75,000.[5]   See 28 U.S.C. § 1332(a).

Plaintiffs, who claim actual and exemplary damages for "serious and

painful injuries" (including a severed spinal cord) along with

attorneys fees and costs, do not dispute that the amount in

controversy in this case is greater than $75,000.[6]   Therefore, the

sole issue before this Court is whether Defendant Olberth Maydana

was improperly joined, such that the requirement of complete

diversity of citizenship is satisfied.

    **B.   Improper Joinder**

    The Fifth Circuit has counseled district courts, in analyzing

diversity jurisdiction, to disregard the citizenship of parties

---

[5] It is well-established that the diversity statute requires
'complete diversity' of citizenship.  A district court generally
"cannot exercise diversity jurisdiction if one of the plaintiffs
shares the same state citizenship as any one of the defendants."
Corfield v. Dallas Glen Hills LP, 355 F.3d 853, 857 (5th Cir.
2003) (citations omitted).

[6] In their responses to Michelin's request for disclosure,
Plaintiffs indicated that they were seeking the following
categories of damages: (1) physical pain and mental anguish in
the past and future, (2) loss of earning capacity in the past and
future, (3) loss of wages and earnings in the past and future,
(4) disfigurement in the past, (5) physical impairment in the
past, (6) medical care in the past and future, (7) bystander
mental anguish in the past and future, and (8) all other damages
allowed by law and equity.  (DEX B at 5-6.)  Plaintiffs also
indicated that they had, to date, incurred over $320,000.00 in
medical expenses.  (DEX B at 6.)  Therefore, even if Plaintiffs
did dispute the amount-in-controversy, the Court would find that
Michelin has met its burden of proving "by a preponderance of the
evidence that the amount in controversy exceeds $75,000." Gebbia
v. Wal-Mart Stores, Inc., 233 F.3d 880, 882-83 (5th Cir. 2000).

that have been *improperly* joined.  See Smallwood v. Ill. Cent. R.R.
Co., 385 F.3d 568, 572-73 (5th Cir. 2004) (en banc) ("The doctrine
of improper joinder rests on . . . statutory underpinnings, which
entitle a defendant to remove to a federal forum unless an in-state
defendant has been properly joined") (citing 28 U.S.C. § 1441(b)).
The rationale of this doctrine of improper joinder (also known as
"fraudulent joinder")[7] is that the right of removal should not "be
defeated by a fraudulent joinder of a resident defendant having no
real connection with the controversy."  Chesapeake & O. R. Co. v.
Cockrell, 232 U.S. 146, 152 (1914).  Rather, federal courts should
be vigilant not to "sanction devices intended to prevent the
removal to a federal court where [a defendant] has that right."
Smallwood, 385 F.3d at 573 (quotation omitted).   The burden of
proving fraudulent joinder, however, is on the defendant, and that
burden is a "heavy one."  Griggs v. State Farm Lloyds, 181 F.3d
694, 699, 701 (5th Cir. 1999).  As the Supreme Court explained:

> [m]erely to traverse the allegations upon which the
> liability of the resident defendant is rested, or to
> apply the epithet 'fraudulent' to the joinder, will not
> suffice:  the showing must be such as compels the
> conclusion that the joinder is without right and made in
> bad faith.

Chesapeake, 232 U.S. at 152.

---

[7]  The term, "improper joinder," was recently adopted by the
Fifth Circuit.  See Smallwood, 385 F.3d at 571 n.1 ("We adopt the
term 'improper joinder' as being more consistent with the
statutory language than the term 'fraudulent joinder,' which has
been used in the past.  Although there is no substantive
difference between the two terms, 'improper joinder' is
preferred").

Therefore, the Fifth Circuit has stated that improper joinder may be established in one of two ways.  The defendant either must show "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  Smallwood, 385 F.3d at 573 (citation omitted).  Only the second method of establishing improper joinder is at issue in this case, and the test under this second approach is whether "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  Id.

Courts have held that "when a Plaintiff, at whatever time and for whatever reason, indicates a desire to completely abandon the claims against all non-diverse defendants, those defendants are fraudulently joined, and the case becomes removable at that moment."  Franz v. Wyeth, 431 F.Supp.2d 688, 690 (S.D. Tex. 2004); see also Aydell v. Sterns, 677 F.Supp. 877, 880 (M.D. La. 1988) ("Where plaintiff by his voluntary act has definitely indicated his intention to discontinue the action as to all non-diverse defendants, the case then becomes removable"); Stamm v. American Tel. & Tel. Co., 129 F.Supp. 719, 721 (D.C. Mo. 1955) (citing cases) ("It is quite well-settled that if the plaintiff voluntarily dismisses, discontinues, or in any way abandons, the action as to the resident joint defendant, the cause then becomes removable, and may, upon prompt action, be removed"); Heniford v. American Motors Sales Corp., 471 F.Supp. 328, 334 (D. S.C. 1979) (plaintiffs'

-7-

counsel's "admonishment to the jury not to return a verdict against [the non-diverse defendant] established the prerequisites for removal"); In re Diet Drugs; Bellah v. American Home Products Corp., No. 98-20560, 1999 WL 106887 at *2-3 (E.D. Pa. March 2, 1999) (unpublished) (acknowledging that improper joinder may be established by voluntary abandonment of a claim, but finding no abandonment under facts of the case).[8]   In order to demonstrate improper joinder based on "voluntary abandonment" of a claim, there need not be a formal dismissal of the non-diverse party, but the defendant must show "a definite or unequivocal expression of intent to discontinue the action against the resident party."   Naef v. Masonite Corp., 923 F.Supp. 1504, 1510 (S.D. Ala. 1996); Delatte v. Zurich Ins. Co., 683 F.Supp. 1062, 1063 (M.D. La. 1988) (citing Erdey v. American Honda Co., Inc., 96 F.R.D. 593, 599 (M.D. La.

---

[8] Although not addressing the issue directly, there is also language in some Third Circuit and Supreme Court cases suggesting that improper (or fraudulent) joinder may be established by a showing that the plaintiffs have no good faith intention to pursue their claim against the non-diverse defendant.  In re Briscoe, 448 F.3d 201, 216 (3d Cir. 2006) ("joinder is fraudulent if there is . . . . no real intention in good faith to prosecute the action against the defendant or seek a joint judgment") (citing Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 32 (3d Cir. 1985); 1A Moore's Federal Practice, ¶ 0.161[2] at 274-76 (2d ed. 1989)); Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 98 (1921) (joinder was fraudulent where "it is apparent that the [non-diverse person] was joined as a defendant without any purpose to prosecute the action in good faith as against him and with the purpose of fraudulently defeating the employer's right of removal"); Chicago, R.I. & P. Ry. Co. v. Schwyhart, 227 U.S. 184, 194 (1913) ("On the question of removal we have not to consider more than whether there was a real intention to get a joint judgment and whether there was a colorable ground for it shown as the record stood when the removal was denied").

1983); <u>DiNatale v. Subaru of America</u>, 624 F.Supp. 340 (E.D. Mich. 1985)); <u>Bourque v. Nan Ya Plastics Corp.</u>, 906 F.Supp. 348, 352 (M.D. La. 1995) ("The defendants can avoid remand of the case if they can show that plaintiff has voluntarily abandoned his claims against the non diverse defendants by clear and unambiguous acts").

In this case, the Court finds that the Plaintiffs have each definitely and unequivocally announced during their depositions that they have no serious, good-faith intent to prosecute their negligence claim against Defendant Olberth Maydana.  In fact, Plaintiffs testified that they *have no negligence claim* against Defendant Olberth Maydana at all.  For example, at his deposition, one of the Plaintiffs, Genaro Ramirez (Defendant Olberth Maydana's father), testified as follows:

> **Q.** When it comes to the actual cause of this accident, do you believe your son, Olberth, did something or did something wrong to cause this accident?
>
> **A.** No.  I know that he has done nothing wrong.
>
> **Q.** I'm wondering if – I'm going to read something to you and I want you to tell me if you believe it to be true or false.  Olberth Amilkar Maydana was negligent in failing to properly maintain the tire in question and failing to control the vehicle.  Do you believe that is a true or false statement? . . .
>
> **A.** That is false.
>
> **Q.** . . . Let me read you this.  That Olberth Amilkar Maydana committed acts of omission which constituted negligence, which negligence was a proximate cause of the injuries suffered by you and your family. . . . Is that true?
>
> **A.** That is not true.  All of that is false because my son

never — I think my son did everything correctly with the car how it reacted.

(DEX D at 62-63.)   Plaintiff Genaro Ramirez further testified:

> **Q**. . . . If for some reason the judge orders your son, Olberth, to pay you, your wife, and your daughter money because the judge believes Olberth caused this accident, if the judge does that, would you accept that money or would you not want that money? . . .
>
> **A**. I would not want it because at no time was my son at fault.
>
> **Q**. And I take it you wouldn't accept his money if he had any to --
>
> **MR. HOELSCHER**: I'm going to instruct him at this point not to answer these questions until I've had an opportunity to discuss with him the legal ramifications of --
>
> **MR. GRAFTON**: I'll move on.

(DEX D at 64.)   In so testifying, Plaintiff Genaro Ramirez spoke, not only on his own behalf, but also on behalf of minor-Plaintiff Harold D. Maydana Torrico in his capacity of next-friend.  <u>See</u>, <u>e.g.</u>, <u>Intracare Hosp. North v. Campbell</u>, 222 S.W.3d 790, 798 (Tex. App.--Houston 2007) (citing <u>Saldarriaga v. Saldarriaga</u>, 121 S.W.3d 493, 499 (Tex. App.--Austin 2003); Tex. R. Civ. P. 44) ("Texas Rule of Civil Procedure 44 gives a next friend the same rights as a guardian, which necessarily include the ability to make any decision with respect to a lawsuit on behalf of the ward"). Plaintiffs have not provided any evidence or indication that they are challenging or disputing Plaintiff Genaro Ramirez's authority to speak for the child, therefore, Plaintiff Genaro Ramirez's

testimony disclaiming a negligence cause of action against Defendant Olberth Maydana binds the child as well.

The other two Plaintiffs in the case echoed the sentiments of Plaintiff Genaro Ramirez.  In particular, Plaintiff Martha Torrico de Maydana (Defendant Olberth Maydana's mother) testified:

> **Q.** Do you think your son did Olberth did anything wrong to cause this accident?
>
> **A.** No. . . . Michelin says that he did something wrong, but he did not.
>
> **Q.** Okay.  My question to you is, do you think he did anything wrong? . . .
>
> **A.** No.
>
> **Q.** Do you think your son Olberth was negligent in the way he operated the vehicle to cause this accident where you were hurt? . . .
>
> **A.** No. No, sir.

(DEX E at 40.)    Likewise, Plaintiff Claudia Faviola Maydana (Defendant Olberth Maydana's sister) testified:

> **Q.** Do you think your brother did anything wrong to cause this accident? . . .
>
> **A.** No, sir.
>
> **Q.** . . . Do you think your brother was negligent in the way he attempted to control the vehicle and thus caused this accident? . . .
>
> **A.** No, sir.
>
> **Q.** . . . Do you blame him in any way for causing this accident? . . .
>
> **A.** No, sir.

(DEX F at 63-64.)[9]

Taken together, Plaintiffs' deposition testimony demonstrates that none of the Plaintiffs in this case have a good faith intent to pursue or follow-through on their claims or allegations of negligence against Defendant Olberth Maydana.[10]  Indeed, Plaintiffs deposition testimony directly and unequivocally contradicts the allegations in the Complaint that (1) Defendant Olberth Maydana was negligent and (2) his negligence proximately caused the Plaintiffs injury.  Moreover, one of the Plaintiffs testified that he is not seeking a judgment against Defendant Olberth Maydana, and would not accept such a judgment if awarded.  In sum, Plaintiffs have amply

---

[9] In their Reply to Michelin's Response to the motion to remand, Plaintiffs argue that Michelin is attempting to use the deposition of a single Plaintiff (Genaro Ramirez) to speak for the intentions of all three Plaintiffs.  This argument is patently false.  In Michelin's Response to the motion to remand, Michelin attaches and relies upon the deposition testimony of each of the three individual Plaintiffs.  Furthermore, Plaintiff Genaro Ramirez also sued as next friend of Harold D. Maydana Torrico, a minor, and thus represents his interests as well.  See Intracare Hosp., 222 S.W.3d at 798.

[10] Plaintiffs' counsel argues in the Reply that the cases finding improper joinder due to voluntary abandonment are distinguishable because those cases involved situations where the *plaintiffs' counsel* (as opposed to the Plaintiffs themselves) took some action to indicate abandonment of a claim.  (See Pls.' Reply at ¶ 1) (emphasis in original.)  This argument is unpersuasive.  The fact that the Plaintiffs *themselves* have indicated they have no good faith intention to attempt to hold Defendant Olberth Maydana liable actually makes this situation a *stronger* case for finding improper joinder because it is the *client*, not the lawyer, that has ultimate authority to determine the objectives to be served by a lawsuit.  See, e.g., Tex. Disc. R. Prof. Conduct 1.02(a) and Comment 1.

demonstrated through their deposition testimony that there is no

bona fide or meaningful controversy between them and their family

member, Defendant Olberth Maydana.   Thus, the Plaintiffs have

unequivocally indicated an intent to abandon their negligence claim

against Defendant Olberth Maydana.   Although Plaintiffs' counsel

makes the conclusory argument that Plaintiffs still wish to pursue

their claim against Defendant Olberth Maydana, Plaintiffs have

failed to present any sworn testimony or affidavits attempting to

contradict or retract the sworn statements in their deposition, nor

have Plaintiffs pointed the Court to any other evidence or actions

which indicate that Plaintiffs have a bona fide intent to maintain

a negligence action against Defendant Olberth Maydana.   Moreover,

the Court finds that the Plaintiffs have no reasonable possibility

of proving negligence against Defendant Olberth Maydana when all

three Plaintiffs have testified under oath that they have no cause

of  action  against  him  because  they  did  not  believe  he  was

negligent.    Therefore,  the  Court  finds  that  Defendant  Olberth

Maydana has been improperly joined and Plaintiff's Motion to Remand

is DENIED.[11]

---

[11] Plaintiffs reliance on the case of <u>Travis v. Irby</u>, 326
F.3d 644 (5th Cir. 2003) is misplaced.  In <u>Travis</u>, the Fifth
Circuit held that a plaintiffs "lack of evidence" supporting her
allegations of negligence against a non-diverse defendant did not
establish improper joinder.  <u>Id.</u> at 649.  In particular, the
Court held that "the lack of substantive evidence as to the
non-diverse defendant does not support a conclusion that he was
fraudulently joined."  <u>Id.</u>  In this case, however, the Plaintiffs
do not merely "lack evidence" against Defendant Olberth Maydana,
rather each Plaintiff has testified under oath that they have no

## III.  CONCLUSION

For the reasons discussed above, Plaintiffs' Motion to Remand (D.E. 5) is DENIED, and the Plaintiffs' claims against Defendant Olberth Maydana are hereby DISMISSED.

SIGNED and ENTERED this 19th day of July, 2007.

_____

Janis Graham Jack
United States District Judge

---

negligence claim against Defendant Olberth Maydana at all *because they do not believe he was at fault for the accident.*  Therefore, the Travis case does not require a contrary result.